IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| JABARI LUCKETT, | * | |
| Plaintiff, | * | |
| v. | * | CV 119-199 |
| RANDALL CHAMBERS; GARRY MCCORD; and NAPOLEAN JONES, | * | |
| Defendants. | * | |

**O R D E R**

Before the Court are Defendants Randall Chambers' motion for summary judgment (Doc. 24) and Napolean Jones and Garry McCord's motion for summary judgment. (Doc. 27.) The Clerk has given *pro se* Plaintiff Jabari Luckett notice of the summary judgment motions and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. The motions have been fully briefed and are ripe for decision. For the following reasons, Defendant Chambers' motion is granted, and Defendants Jones and McCord's motion is granted in part and denied in part.

## I. BACKGROUND

This case encompasses a number of Section 1983 claims arising from an incident that occurred on September 16, 2016. (Arrest and Booking Report, Doc. 27-5.) At that time, Plaintiff was subject to a Fourth Amendment waiver stemming from a Dawson County conviction and sentence. (Dawson County Judgment, Doc. 27-8, at 7, 9.) Plaintiff initiated this case on November 20, 2019. (Doc. 1.) He later amended his complaint on February 18, 2020. (Am. Compl., Doc. 10.) Plaintiff asserts claims of false arrest and malicious prosecution under 42 U.S.C. § 1983 against each Defendant. (Id. at 5-6.)

One set of circumstances led to two investigations: one in Jefferson County and one in Columbia County. On the night of September 16, 2016, Monica Thomas was working as a cashier at a Sprint convenience store in Wrens, Georgia. (Thomas Aff., Doc. 27-2, ¶¶ 2-3.) Plaintiff entered her store, and Ms. Thomas recognized him from a flyer circulated by the Columbia County Sheriff's Office ("CCSO").[1] (Id.) After Plaintiff bought a carton of cigarettes with a credit card, Ms. Thomas called 911 to report that Plaintiff was in the store. (Id. ¶ 3.) Officers from Wrens Police Department ("WPD") and Jefferson County Sheriff's Office

---

[1] The flyer contained an image of Plaintiff and warned that he purchases cigarettes with fake credit cards. (Thomas Aff., Ex. 1.)

2

responded to the store and detained Plaintiff. (Id. ¶ 4.) Ms. Thomas spoke with the officers, including Defendants Napolean Jones and Garry McCord, and showed them the flyer. (Id.) McCord was the Chief of the WPD. (McCord Decl., Doc. 27-27, ¶ 2.) The officers identified Plaintiff as the man on the flyer, and McCord directed them to detain Plaintiff. (Id. ¶ 6.) As the officers detained him, Plaintiff mouthed to Ms. Thomas "I am going to get you." (Thomas Aff., ¶ 5.) Ms. Thomas believed Plaintiff was threatening her, so she informed the officers of the threat. (Id.) Later, in May of 2019, Plaintiff texted Ms. Thomas stating, "I mean you know [sic] harm I'm suing the wrens police department" and that Ms. Thomas could "make money too" because "[t]hey violated my rights." (Id. ¶ 6; Thomas Aff. Ex. 2.)

Returning to September 16, 2016, the officers searched Plaintiff and found numerous credit and gift cards in his pockets: a Visa prepaid debit card, a Visa gift card, two "Fred's" gift cards, seven prepaid American Express gift cards, and a Regions Bank debit card. (McCord Decl., ¶ 11.) Jones called several credit card companies and determined that some of the cards were not genuine. (Jones Decl., Doc. 27-3, ¶ 12.) However, Jones' incident report states that the two Fred's gift cards were valid and not stolen. (Doc. 33-1, at 17.)

With the knowledge that some of the cards were not genuine, McCord and Jones sought the assistance of Defendant Randall

3

Chambers, an investigator for the CCSO. (Jones Decl., ¶ 13.) Chambers used a scanner on eleven of the cards found on Plaintiff's person and found that ten of the eleven cards were "reprogrammed with other debit or credit card numbers that did not match the numbers on the cards." (Chambers Decl., Doc. 27-4, ¶ 8.) This was Chambers' only involvement in the Jefferson County matter. (Id. ¶ 13.)

A. Jefferson County

On September 18, 2016, McCord executed an arrest warrant affidavit accusing Plaintiff of making a terroristic threat against Ms. Thomas. (McCord Decl., ¶ 15.) He then offered the affidavit and oral testimony to a magistrate judge, who found probable cause for Plaintiff's arrest. (Id.; Arrest Warrants, Doc. 27-7, at 22-23.) The magistrate judge held an initial appearance on September 20, 2016 and ruled that Plaintiff would be held without bond on a misdemeanor charge of terroristic threats and acts. (Doc. 27-15.) On September 23, 2016, Jones executed arrest warrant affidavits accusing Plaintiff of ten counts of forgery of financial transaction cards. (Jones Decl., ¶¶ 15-16.) The magistrate judge issued ten such warrants based on the affidavits and Jones' oral testimony. (Id.; Arrest Warrants.) A $50,000 bond was set at his September 26, 2016 initial appearance. (Doc. 27-16.)

Plaintiff's preliminary hearing took place on June 16, 2017 in Jefferson County. (Preliminary Hearing Transcript, Doc. 27-14.) The superior court judge bound Plaintiff over to the grand jury that same day for the fraudulent transaction cards but not for the terroristic threats charge. (Id. at 16-17; Doc. 27-22.) The district attorney dismissed the terroristic threats warrant on June 21, 2017 and dismissed the forgery charges on November 29, 2017. (Docs. 27-23; 27-24.) Plaintiff remained in custody on separate Columbia County charges and for a probation violation in Dawson County. (Docs. 27-25; 27-26.)

B. Columbia County

While detained in Jefferson County, CCSO identified Plaintiff as a suspect in their investigation of him for identity fraud. (Chambers Decl., ¶ 18.) Chambers applied for and received an arrest warrant from a Columbia County magistrate judge on September 20, 2016 for one count of identity fraud. (Id. ¶ 7; Doc. 27-17.) Plaintiff was arrested in Columbia County on October 5, 2016. (Id. ¶ 10.) He was indicted on two counts of identity fraud on November 3, 2016. (Doc. 27-18.) Plaintiff pleaded guilty to the two counts on November 29, 2018 and was sentenced to time served. (Doc. 25-3, at 6-7.)

## II. JURISDICTION AND VENUE

The Court has jurisdiction over this case under 28 U.S.C. § 1331 as the case arises under federal law. This Court is the proper venue under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim took place in Jefferson and Columbia Counties, both of which are part of the Southern District of Georgia.

## III. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation

omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 322-23. When the movant does not bear the burden of proof at trial, it may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Celotex Corp., 477 U.S. 317). The movant cannot satisfy its initial burden by merely declaring that the non-moving party cannot meet its burden at trial. Id. at 608.

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must

7

respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993). On the other hand, if the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1116–17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See <u>Morris v. Ross</u>, 663 F.2d 1032, 1033–34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56. In reaching its conclusions herein, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in this case.

## IV. DISCUSSION

### A. False Arrest

All three Defendants argue that Plaintiff's false arrest claims are time barred. Plaintiff provides no rebuttal to Defendants' timeliness argument.

Section 1983 actions are subject to the statute of limitations governing personal injury actions in the state where the Section

1983 action is brought, so Georgia's statute of limitations applies. DeYoung v. Owens, 646 F.3d 1319, 1324 (11th Cir. 2011). Georgia law provides a two-year statute of limitations for personal injury actions, including false arrest. O.C.G.A. § 9-3-33; Smith v. Mercer, 580 F. App'x 871 (Mem), 872 (11th Cir. 2014). The limitations period begins running when the cause of action accrues, and accrual in Section 1983 cases is governed by federal law. Brown v. Lewis, 361 F. App'x 51, 54-55 (11th Cir. 2010) (quoting Uboh v. Reno, 141 F.3d 1000, 1002 (11th Cir. 1998) *abrogated on other grounds by* Williams v. Aguirre, 965 F.3d 1147 (11th Cir. 2020)). False arrest claims followed by criminal proceedings accrue when the plaintiff/suspect is detained pursuant to legal process. Jones v. Union City, 450 F. App'x 807, 809 (11th Cir. 2011) (citing Wallace v. Kato, 549 U.S. 384, 391 (2007)). Examples of such process include being bound over by a magistrate judge or arraigned on charges. Wallace, 549 U.S. at 389.

With this legal framework in mind, Plaintiff's Jefferson County false arrest claim accrued - at the latest - on June 16, 2017. Plaintiff filed suit on November 20, 2019, which is more than two years after these false arrest claims accrued. Therefore, Plaintiff's Jefferson County false arrest claims are time barred, and summary judgment is granted in McCord and Jones' favor.[2]

---

[2] In his response, Plaintiff argues for the first time that his cell phones were seized without a search warrant, making Chambers'

9

Any false arrest claims stemming from Columbia County accrued on the day of his arrest - October 5, 2016. See Shuler v. Duke, 792 F. App'x 697, 702 (11th Cir. 2019) (ruling that false imprisonment claims accrue on the day of arrest when detention is pursuant to legal process because that is when the plaintiff knows of his or her injury and who caused it) (citing Wallace, 549 U.S. at 390; Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003)). Therefore, Plaintiff's Columbia County false arrest claims are also time barred, and summary judgment is granted in Chambers' favor.

B. Malicious Prosecution

All three Defendants assert qualified immunity against Plaintiff's malicious prosecution claims. Qualified immunity is a judicially created affirmative defense under which "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v.

---

subsequent actions "fruit of the poisonous tree." (Doc. 31, at 9.) Any claims based on an alleged illegal search and seizure are also time barred. See Bennett v. Harper, No. 5:18-cv-48, 2020 WL 1071293, at *2 (S.D. Ga. Mar. 5, 2020) ("[C]laims arising out of police actions toward a criminal suspect, such as . . . search and seizure, are presumed to have accrued when the actions actually occur.") (quoting Giddens v. Lawson, 734 F. App'x 706, 710 (11th Cir. 2018)), report and recommendation adopted, 2020 WL 1528439 (S.D. Ga. Mar. 30, 2020).

10

Fitzgerald, 457 U.S. 800, 818 (1982). For qualified immunity to apply, a public official first must show "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003) (citations omitted). To determine whether a government official was acting within the scope of his discretionary authority, courts consider whether the official "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).

The Court finds Defendants engaged in discretionary functions when they performed the acts of which Plaintiff complains. See Stanton v. McIntosh Cty., No. CV 209-092, 2010 WL 11526845, at *6 (S.D. Ga. Sept. 29, 2010) (quoting Brock v. City of Zephyrhills, 232 F. App'x 925, 927-28 (11th Cir. 2007)) ("The acts of obtaining and executing a warrant for an arrest . . . qualify as discretionary functions of law enforcement officers."). As such, the burden shifts to Plaintiff to show qualified immunity is inappropriate because Defendants' conduct violated a constitutional right and that right was clearly established.

Once a defendant establishes that he was "acting within [his] discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate" by showing

that the facts reveal that the defendant's conduct violated a constitutional right and that right was clearly established. Bowen v. Warden, Baldwin State Prison, 826 F.3d 1312, 1319 (11th Cir. 2016); Lumley, 327 F.3d at 1194. The right at issue is the freedom from unreasonable search and seizure under the Fourth Amendment of the United States Constitution.

"A claim of malicious prosecution is distinct from a false-imprisonment claim in that malicious prosecution requires a seizure pursuant to legal process." Smith v. Mitchell, --- F. App'x ---, 2021 WL 1292751, at *1 (11th Cir. 2021) (citing Williams v. Aguirre, 965 F.3d 1147, 1158 (11th Cir. 2020)). Proceeding under Section 1983, Plaintiff must show both the common law elements of malicious prosecution and an unreasonable seizure in violation of the Fourth Amendment. Id.; Laskar v. Hurd, 972 F.3d 1278, 1285 (11th Cir. 2020) (stating that Section 1983 malicious prosecution plaintiff must prove both illegal seizure and common law elements).

When an arrest is made pursuant to a warrant – like here – four common law elements are required to establish a claim of malicious prosecution: "(1) a criminal prosecution instituted or continued by the defendant (2) with malice and without probable cause that (3) terminated in plaintiff's favor and (4) caused the plaintiff damage." Id. (citing Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003)). Demonstrating an unreasonable seizure in

12

violation of the Fourth Amendment requires two more showings: "(1) that the legal process justifying [the] seizure was constitutionally infirm and (2) that [the] seizure would not otherwise be justified without legal process." Williams, 965 F.3d at 1165.

*1. Investigator Chambers*

As a matter of law, Plaintiff cannot establish the four common law elements for his malicious prosecution claim against Defendant Chambers. The only prosecution Chambers instituted against Plaintiff was the one in Columbia County.[3] (Chambers Decl., ¶ 12.) That prosecution did not terminate in Plaintiff's favor – he pleaded guilty and served his sentence. Thus, summary judgment is granted in favor of Chambers on Plaintiff's malicious prosecution claim.

*2. Chief McCord and Officer Jones*

McCord and Jones defend against Plaintiff's malicious prosecution claims primarily by arguing that probable cause existed for Plaintiff's Jefferson County prosecution. Stated in terms of the claim's elements, Defendants argue that the legal process justifying Plaintiff's seizure was constitutional.

---

[3] Chambers' only role in the Jefferson County prosecution was using his card reader to scan gift and credit cards. (Chambers Decl., ¶ 13.)

13

In this case, McCord and Jones arrested Plaintiff pursuant to warrants - McCord for the terroristic threats charge and Jones for the forgery of financial transaction cards charge. (See Arrest Warrants.) Therefore, the question is whether "the judicial officer issuing [the warrants was] supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." Williams, 965 F.3d at 1162 (quoting Whiteley v. Warden, 401 U.S. 560, 564 (1971)). In other words, did the magistrate judge issuing the warrants for Plaintiff's arrests have sufficient information to find probable cause. Id. at 1162-63.

Continuing this analysis, the Williams court went on to state that the plaintiff, in order to establish the infirmity of the legal process justifying his seizure, must show that either the officer who applied for the arrest warrant should have known that the application failed to establish probable cause, or that an official intentionally or recklessly made a misstatement or omission necessary to support the warrant. Id. at 1165. Plaintiff must "identify affirmative evidence from which a jury could find that the officer[] lied" on the warrant applications. Id. at 1166 (quotation omitted). General attacks, conclusory allegations, and speculation are not enough. Id. at 1165-66.

#### a. Chief McCord

With respect to Defendant McCord, Plaintiff argues that McCord fabricated the terroristic threats charge because Plaintiff never said anything to Ms. Thomas. Plaintiff argues that evidence of his alleged threat is hearsay and that the contents of the statement, "I'm going to get you" or "I got you," could not be construed as a threat. First, an affidavit is not insufficient solely because it is based upon hearsay. See Illinois v. Gates, 462 U.S. 213, 241-42 (1983) (quoted source omitted). Second, a statement of "I'm gonna get you" has been deemed sufficient to support a finding of a terroristic threat in certain circumstances. See Cook v. State, 403 S.E.2d 872, 873 (Ga. Ct. App. 1991). In this case, Plaintiff made the statement as he was being detained after Ms. Thomas called the police on him. Under such circumstances, Plaintiff's statement could reasonably be considered a threat of revenge. With no other evidence beyond his general attack on McCord's credibility, Plaintiff's malicious prosecution claim fails against McCord.

#### b. Officer Jones

As to Defendant Jones, Plaintiff argues that Jones listed two valid transaction cards as fraudulent in two of the ten arrest warrant affidavits for the forgery of financial transaction card charges. Plaintiff must "identify affirmative evidence from which a jury could find" that Jones lied on these affidavits, and

15

Plaintiff does so. Williams, 965 F.3d at 1166. According to Jones' incident report dated September 17, 2016, the Fred's gift cards were valid. (September 17, 2016 Incident Report, Doc. 33-1, at 17.) Thus, a conflict exists between Jones' incident report and two of his affidavits in support of the arrest warrants. (Compare id. with Arrest Warrants, at 8, 10.) Such a conflict is sufficient to create a genuine dispute of material fact as to whether these two warrants were constitutionally infirm. See Williams, 965 F.3d at 1165.

Plaintiff has successfully created a dispute of material fact as to whether the two warrants related to the Fred's gift cards contained intentional or reckless misstatements. That is because there is an inconsistency between Jones' incident report and his warrant affidavits for the Fred's gift cards charges and a jury could conclude that Jones acted intentionally or recklessly in executing those affidavits. See Williams, 965 F.3d at 1166. ("A reasonable jury could infer from these inconsistencies that the officers' statements were intentionally false.") This could satisfy the common law element of "with malice and without probable cause." Laskar v. Hurd, 972 F.3d 1278, 1296 (11th Cir. 2020).[4]

---

[4] As this Court interprets Williams and Laskar, the fact that the other eight warrants may be entirely valid is irrelevant. Williams states that the "any-crime rule" is inapplicable to a malicious prosecution claim, and therefore, a plaintiff will prevail on summary judgment if "he establishes a genuine dispute about whether

16

It is also sufficient to defeat qualified immunity. "[T]he law [is] clearly established . . . that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit . . . ." Williams, 965 F.3d at 1168-69 (quoting Jones v. Cannon, 174 F.3d 1271, 1285 (11th Cir. 1999)).

The remaining common law elements of malicious prosecution are also satisfied: the prosecutions were initiated by Jones as evidenced by his swearing out of the warrant affidavits and they terminated in Plaintiff's favor when the charges were dismissed.

As for damages, Plaintiff must "show that, but for th[ose] illegitimate charge[s], he would have been released earlier or would not have faced detention." Williams, 965 F.3d at 1161 (quotation omitted). If he cannot so show, he is still entitled to nominal damages for the violation of his constitutional rights. Id. (citing Slicker v. Jackson, 215 F.3d 1225, 1231 (11th Cir. 2000)). Here, Plaintiff has not demonstrated that he would have been released earlier if the two charges based on the Fred's gift cards had not been brought. Indeed, the other eight warrants that Plaintiff does not challenge support the conclusion that the elimination of the two Fred's warrants would not have changed his confinement. Therefore, should Plaintiff successfully prove that Jones intentionally or recklessly made false statements on the

---

at least one of the . . . charges against him . . . lacked probable cause." 965 F.3d at 1158.

17

affidavits for the Fred's cards arrest warrants, Plaintiff will be entitled only to nominal damages.

## V. CONCLUSION

Plaintiff has demonstrated a genuine dispute of material fact as to whether Defendant Jones maliciously prosecuted him for two charges of forgery of financial transaction cards based on the two Fred's gift cards. Therefore, McCord and Jones' motion for summary judgment (Doc. 27) is **DENIED IN PART** as to those two claims against Jones but **GRANTED IN PART** on the remainder of Plaintiff's claims against Jones and McCord. Defendant Chambers' motion for summary judgment (Doc. 24) is **GRANTED**. The Clerk shall therefore terminate Defendants McCord and Chambers as party defendants in the case and **ENTER JUDGMENT** in their favor. Plaintiff's malicious prosecution claims against Defendant Jones for nominal damages only shall proceed to trial in due course.

**ORDER ENTERED** at Augusta, Georgia this 21st day of July, 2021.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA